IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

LAURENCE BARKER,

        Plaintiff,

v.                                                                                  case no. _____

DABELLA EXTERIORS LLC,

        Defendant.

## COMPLAINT FOR VIOLATIONS OF THE UNFAIR PRACTICES ACT AND THE TELEPHONE CONSUMER PROTECTION ACT

TO THE HONORABLE COURT:

1.      Plaintiff Laurence Barker ("Plaintiff") is a real person who brings this action pursuant to Section 22 of the New Mexico Unfair Practices Act ("the UPA") and pursuant to the federal Telephone Consumer Protection Act ("the TCPA").

2.      The UPA is intended to protect consumer privacy by prohibiting certain phone calls, and requires that telemarketers identify who they are calling for during their calls. The TCPA is of similar design.

3.      The TCPA and the FTC's Telemarketing Sales Rule ("the TSR") established the National Do-Not-Call Registry ("the Registry"). The Registry allows people to list their telephone numbers and thereby indicate their instructions to NOT receive telephone solicitations. Telemarketers are required by law to subscribe to and comply with the Registry. NMSA § 57-12-22(C); 47 U.S.C. § 227(C); 16 C.F.R. Part 310; 47 C.F.R. § 64.1200(c).

4.     The UPA and the TCPA each establish private rights of action to recover statutory damages for unlawful telephone solicitations.

5.     Defendant Dabella Exteriors LLC ("Defendant" or "Dabella") is an Oregon limited liability company that may be served process by service on its Oregon registered agent Corporation Service Company, at 1127 Broadway St. NE #310, Salem, OR 97301

### Jurisdiction and Venue

6.     Plaintiff and his telephone were in the State of New Mexico at the time of the unlawful telemarketing the subject of this Complaint that Defendant and/or its agents harassed him with. Venue is proper because Plaintiff resides in Bernalillo County. This Court has subject matter jurisdiction. *Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740 (2012).

7.     Defendant does business in New Mexico because Defendant or its agents regularly advertises and sells home improvement products and services to New Mexico residents throughout the State of New Mexico. Defendant also does business in New Mexico because Defendant or its agents regularly, automatically, repeatedly telephone the phones of New Mexicans located within New Mexico for the purpose of advertising products and services. Defendant authorized and approved telemarketing to sell products and services throughout the State of New Mexico.

### the unlawful telephone solicitations to Plaintiff Defendants are Responsible For

8.     Plaintiff has a wireless or cell phone assigned a 505-area-code number ("Plaintiff's phone"). Plaintiff uses this phone and number for his personal, household and residential needs.

9.     Plaintiff's cell phone number referred to above has at all relevant times been continuously listed on the National Do-Not-Call Registry. Plaintiff listed the number on the Registry himself.

10.    Within the past twelve (12) months Defendant or its agents has repeatedly called Plaintiff's cell phone with an automated telephone dialing system ("auto-dialer"). Defendant's calls have all

borne a marked similarity, indicating their common source, and have attempted to sell Plaintiff home improvement products and services.

11. Plaintiff never gave prior express written consent to receive telephone solicitations from Defendant or its agents.

12. Plaintiff has never had any prior relationship with Defendant.

13. Defendant's calls complained of herein aggravated and harrassed Plaintiff, wasted his time, invaded his privacy, disrupted his days, were an obnoxious nuisance and cost him money for electricity to re-charge his phone.

14. Plaintiff states Defendant's or its agents' calls to Plaintiff's phone were automated or made or initiated with an auto-dialer because the calls had characteristics of auto-dialer calls:

   a) in some of the calls when Plaintiff answered he heard a strange pause of silence or "dead air" before a live telemarketer came on the line, then the live telemarketer commenced a standardized, scripted sales-pitch that was not directed to Plaintiff in particular but to any person who may have answered any of the calls; and

   b) in the balance of the calls when Plaintiff answered he first heard a pre-recorded or artificial voice or message before he could speak to a live telemarketer.

15. For the calls that used a pre-recorded or artificial voice or message, Plaintiff knew it was not a real person speaking at him because of his familiarity with normal human interaction including intonation and manners of speaking, and because of his inability to engage the prerecorded or artificial voice in common sensical communication or banter that was not pre-programmed. The pre-recorded voices and messages sounded distinctly different from normal human communication because they sounded fabricated, mechanical and automated.

16. After repeated robocall harassment in which Defendant's callers did not identify themselves or Defendant in the manner required by law, after he answered Plaintiff decided to listen to the generic scripted sales pitch and express interest in the products or services Defendant's telemarketers were offering.

17. Plaintiff did not express complaints about the calls or demand to know who the sponsors of the call really were. If he had done so too soon, the telemarketers were trained by Defendant that Defendant's policies and practices included to just hang up the phone on any person who complained or demanded to know who Defendant was.

18. On April 11, 2025 Plaintiff received a phone call on his cell phone referred to above. The call caused his phone's Caller ID to show the incoming call came from 505-581-1927.

19. When Plaintiff answered this call there was a strange, brief pause of silence or dead air, followed by a pre-recorded or artificial voice or message that offered Plaintiff a free estimate on window replacements for his home. The voice did not state who the caller or sponsor of the call was. Plaintiff stayed on the call until he was transferred to a live telemarketer.

20. A heavily-accented person who said he was "Sebastain" from "Home Improvement" took over the call and offered Plaintiff a free estimate for home improvements. He asked for Plaintiff's name and address. Sebastain then said a representative of the company would be calling to set up an appointment for the free estimate.

21. This call of April 11 was well over 15 seconds long but Plaintiff was never told the name of the Seller or sponsor of the call. "Sebastain" and "Home Improvement" were fake names the caller knew could never be used to actually identify or locate Defendant.

22. The call described above did not spoof or fake Plaintiff's phone's Caller ID. 505-581-1927 is a legitimate phone number actually used by or assigned to Defendant or its actual caller

4

agent. Plaintiff called the number back to confirm what would happen and, when he did, he could leave a voice-mail message for the assignee of the phone number 505-581-1927.

23. On April 28, 2025 Plaintiff received two (2) text message calls from 503-563-2370. Plaintiff replied to each text. These calls were made by Defendant. True copies of the text messages and Plaintiff's replies are **Exhibit 1** attached hereto in support of this Complaint.

24. 503-563-2370 is a legitimate phone number actually used by or assigned to Defendant. Defendant is directly reached by calling 503-563-2370.

25. "Dabella" and the Dabella Butterfly shown in the text messages from Defendant, are trademarked by Defendant. Defendant's proprietary trademarks registered with the US Patent & Trademark Office, including "Dabella" and the Dabella Butterfly, include USPTO serial numbers 90141667 and 88022494.

26. Later in the day on April 28 Plaintiff received a phone call on his cell phone referred to above that caused his phone's Caller ID to show the incoming call came from 505-219-1208. Plaintiff answered this call and the caller said his name was "Chris", from "DaBella". He said he was calling to set up a time and day for the free estimate on window replacement.

27. Plaintiff asked Chris if Chris was calling from Albuquerque. Chris said he was calling from Portland, and again referred to "Dabella" as who he was calling on behalf of. Chris stated that Dabella has an office at 7850 Jefferson St. in Albuquerque.

28. Defendant has an office at 7850 Jefferson St. in Albuquerque. Alternatively, a subsidiary, affiliate or franchisee of Defendant maintains an office at 7850 Jefferson St. in Albuquerque on behalf of Defendant.

29. 505-219-1208 is a legitimate phone number actually used by or assigned to Defendant. Defendant is directly reached by calling 505-219-1208.

5

30. April 29 Plaintiff received a phone call on his cell phone referred to above that caused his phone's Caller ID to show the incoming call came from 505-219-1208. Plaintiff answered then "Nevaeh" said she was from "DaBella" and that she was "calling on a recorded line." Plaintiff heard a lot of muffled voices in the background which indicated Nevaeh was working in a call center. Nevaeh wanted to schedule a time for Defendant's contractor to visit Plaintiff and provide an estimate for home improvements.

## More Facts

31. Defendant sells home improvement products and services to consumers nationwide, including within the State of New Mexico. One of Defendant's strategies for marketing its products and services and generating new customers is telemarketing done by both itself in-house, and by third parties Defendant hires to generate leads.

32. Defendant's lead-generator made the first call described above, on behalf of Defendant.

33. Defendant itself directly made the balance of the calls described above.

34. Defendant hires third-parties using contracts and agreements that give it the right to control the telemarketing. For example, Defendant can dictate certain area codes in which phone numbers will be called, the times of day and days of the week in which calls will be made and Defendant controls and dictates aspects of standardized, pre-approved sales scripts that will be used on the phone with consumers.

35. Defendant's control includes the pricing of its products that will be represented to consumers, and the names of the callers or sponsors of the calls that will be told to consumers as part of the sales pitch. Defendant controls the amounts of telemarketing done on its behalf so that it will have enough salespeople and contractors available to handle the sales made as a result of the calls.

36. Defendant also has a right to demand from its telemarketers and lead-generators documentation of how leads were generated. Defendant has a right pursuant to its contracts and agreements with them, to audit and monitor how its telemarketers and lead-generators generate leads.

37. Defendant knows that its lead-generators use pre-recorded or artificial voices and messages in telemarketing calls made on Defendant's behalf, that the calls are automated, that DNC-registered phone numbers are called and that consumers who answer are not promptly told who the seller or sponsor of the call is, because some of the recipients of these calls call Defendant back to leave messages describing and complaining about the calls.

38. Defendant at the same time that it controls, directs, supervises and implements telemarketing, including that unlawfully directed at Plaintiff and into the State of New Mexico as described above, does not require its employees or agents to subscribe to or comply with telemarketing regulations and laws. Defendant is consciously indifferent to telemarketing regulations and laws.

39. At the times of the telemarketing complained of by Plaintiff as set forth above, Defendant did not subscribe to or comply with the Registry as required by 47 C.F.R. § 64.1200**(c)**.

40. At the times of the telemarketing complained of by Plaintiff as set forth above, Defendant had failed to adopt and implement the business policies and practices required by 47 C.F.R. § 64.1200**(d)**.

41. Defendant does not train or supervise its agents or employees to comply with telemarketing laws.

42. Defendant uses robocalling as a sales strategy because it allows for thousands of automated sales calls to be initiated in a very short period of time, but its sales representatives only need actually spend time on the phone with consumers who respond positively. Defendant thereby unlawfully shifts the cost of aggravation and wasted time to the public at large and away from itself where it belongs.

43. Mass-marketing by robocall results in consumer complaints. Based on the numbers of consumer complaints to it or about its telemarketing, Defendant had an actual awareness or should have had an actual awareness that its agents actually making or initiating telephone solicitations, including the calls to Plaintiff described above, used robocalls directed to people who objected to the calls, to cell phones, to people who did not consent to the calls, and to people whose telephone numbers were listed on the Registry.

44. Minimal oversight by Defendant would have confirmed for it that telemarketing done on its behalf was done without complying with the Registry, the TCPA, the UPA or the TSR.

45. In addition to the call-backs from recipients of its calls describing unlawful telephone solicitations made on Defendant's behalf, Defendant has repeatedly been sued in state and federal courts around the country, by different consumers, for unlawful telephone solicitations. These lawsuits and the discovery conducted and being conducted in them additionally put Defendant on notice that its lead-generators have not adopted or implemented adequate compliance practices required by law, and that Defendant must monitor, train and supervise its lead-generators for telemarketing compliance. However Defendant chooses as a business strategy to fail to adopt and implement the compliance policies and practices required by 47 C.F.R. § 64.1200(d), because Defendant perceives that the benefits of resulting sales outweigh the cost of litigation.

### FIRST SET OF CLAIMS FOR RELIEF - UPA Violations

46.     Plaintiff hereby brings this action pursuant to the New Mexico Unfair Practices Act ("the UPA") to recover his statutory damages for each violation of the UPA and his attorney fees. As set forth above Defendants' conduct was knowing and/or willful therefore Plaintiff is entitled to and should be awarded treble damages.

47.     The call on April 11 described above violated NMSA §57-12-22(A) and §57-12-22(B)(1). Plaintiff should be awarded $600 total for these 2 violations.

48.     Each call to Plaintiff described above violated NMSA §57-12-22(C)(1). Plaintiff should be awarded $300 for each of these violations.

### SECOND SET OF CLAIMS FOR RELIEF - Violations of the TCPA's Subsection B

49.     The foregoing acts and omissions of Defendant or its agents on its behalf violated 47 U.S.C. § 227(b) and its implementing regulations banning the use of pre-recorded message voices and auto-dialer calls to cell phones.

50.     Plaintiff is entitled to and should be awarded against Defendant $500 in damages for each and every violation of the TCPA's Subsection B and its implementing regulations. Because Defendant's conduct set forth above was knowing and/or willful Plaintiff is entitled to and should be awarded treble damages of up to $1,500 for each and every violation.

### THIRD SET OF CLAIMS FOR RELIEF - Violations of the TCPA's Subsection C

51.     For each of Defendant's calls to Plaintiff the subject of this Complaint, Plaintiff should recover up to an additional $1500 pursuant to 47 C.F.R. § 64.1200(c), because Defendant failed and refuses to comply with the Registry.

52.     For each of Defendant's calls to Plaintiff the subject of this Complaint, Plaintiff should recover up to an additional $1500 pursuant to 47 C.F.R. § 64.1200(**d**) because Defendant failed and refuses to adopt adequate internal compliance policies or practices required by law.

WHEREFORE, Plaintiff prays for entry of judgment for - his statutory and treble damages sufficient in size to set an example and deter in the future the conduct complained of by Defendant or others.   Plaintiff prays for such other and further relief as the court finds proper.  Plaintiff requests an award of his attorney fees and costs.

RESPECTFULLY SUBMITTED,

By: _____

Sidney P. Childress, Lawyer
1925 Aspen Dr. #600A
Santa Fe, NM 87505
childresslaw@hotmail.com
(505) 433 - 9823
Attorney for Plaintiff



**+1 (503) 563-2370**

Text Message • SMS
Monday 2:00 PM



# DaBella

Hi Chris, this is DaBella. I see you are interested in a Home Improvement estimate. I can get you scheduled for a free in home estimate. What day/time works best?

reply STOP to opt out of text messages. data & msg rates may apply.

Happy to meet. I do need to know the name and address of your company. Thanks.

Dabella. We have a specialist in your area Tuesday, 4/29. I can have them stop by at either 10am or 2pm, which works best for you?

If I am going to meet you please



+1 (503) 563-2370

## DaBella

Hi Chris, this is DaBella. I see you are interested in a Home Improvement estimate. I can get you scheduled for a free in home estimate. What day/time works best?

reply STOP to opt out of text messages. data & msg rates may apply.

Happy to meet. I do need to know the name and address of your company. Thanks.

Dabella. We have a specialist in your area Tuesday, 4/29. I can have them stop by at either 10am or 2pm, which works best for you?

If I am going to meet you please provide the complete name and street address of your company.

The sender is not in your contact list.
**Report Junk**

Text Message • SMS